890 A.2d 847

Michael David JULIANO

v.

STATE of Maryland.

No. 2570, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Jan. 27, 2006.

534

Brian M. Saccenti (Nancy S. Forster, Public Defender, on brief), for appellant.

Celia Anderson Davis (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellees.

Argued before EYLER, JAMES R., KRAUSER and BARBERA, JJ.

BARBERA, J.

This appeal requires us to consider the constitutionality of Maryland's restitution statute, formerly codified at Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.), Article 27, § 807.[1] Appellant, Michael Juliano, contends that the statute eliminates the requirement that the State prove the victim's entitlement to restitution. For the reasons we shall discuss, that contention fails.

Appellant also complains about the amount of restitution he has been ordered to pay, and the prosecutor's comments and conduct during his rebuttal to the defense's closing argument. We discern no abuse of discretion in the trial court's ruling with respect to closing argument. We conclude, however, that the court erred in determining the amount of restitution. We shall therefore vacate the restitution order and remand for a new determination of the proper amount of restitution.

## FACTS AND PROCEDURAL HISTORY

The underlying facts of this case are straightforward. In April 2001, appellant participated in a scheme that involved the purchase of automotive parts with stolen credit card information. Early in that month, appellant, representing himself as "John" from "Wade's Towing," made a telephone

---

1. By Acts 2001, ch. 10, effective October 1, 2001, the restitution scheme was recodified at Maryland Code (2001, 2005 Supp.), §§ 11–601 et seq. of the Criminal Procedure Article ("CP"). The portions of former Article 27, § 807 at issue in this appeal are now found at CP §§ 11–603 and 11–605.

call to Brandywine Auto Parts, Inc. ("Brandywine"). He placed an order for parts, supplying the number of a credit card belonging to Bonnie and Thaddus Rose. He informed the sales clerk that he anticipated making a number of future purchases and wanted to use the same credit card number for each transaction. The clerk recorded the credit card number. During the next several weeks, appellant placed numerous telephone orders using that card number. Appellant or other persons picked up the orders from Brandywine.

A grand jury sitting in the Circuit Court for Charles County returned an indictment charging appellant with one count of theft of property with a value of $500.00 or more. Following a two-day jury trial, he was found guilty of that offense. The court sentenced appellant to fifteen years' incarceration, with all but eleven years suspended, and four years' probation. The court also ordered, as a condition of probation, that appellant pay $6,881.42 in restitution to Brandywine. This appeal followed.

Appellant frames the questions as follows:

I. Did the prosecutor's comments and conduct during closing argument deprive [appellant] of his right to a fair trial?

II. Did the trial court err in ordering [appellant] to pay restitution in the amount of $6,881.42?

 A. Maryland's restitution statute is unconstitutional.

 B. The circuit court erred in failing to make explicit findings of fact with respect to the amount of restitution.

 C. The amount of restitution is not supported by competent evidence.

We shall address the two questions in reverse order.

## DISCUSSION

### Restitution

■ Appellant challenges the constitutionality of Maryland's "statutory restitution scheme," arguing that the statute

violates due process because it dispenses with the requirement that the State prove by a preponderance of the evidence both the victim's entitlement to restitution and the amount of it. He points to the statute's inclusion of the language that a victim's entitlement to restitution is "presumed," enabling the sentencing court to order that relief solely on the basis of "competent evidence." He separately contests the restitution award as not supported by competent evidence.

The State responds to the merits of appellant's arguments. The State also interposes the contention that appellant has not preserved the arguments for our review. We first shall consider the State's preservation argument.

The court entered the order of restitution in this case as a condition of probation.[2] "An order to pay restitution as a condition of probation is part of the punishment for the crime. As such, 'an illegal condition of probation can be challenged as an illegal sentence.' " *Goff v. State,* 387 Md. 327, 340, 875 A.2d 132 (2005) (citation omitted).

A sentence, if illegal, may be corrected at any time. Md. Rule 4–345(a); *Mateen v. Saar,* 376 Md. 385, 397, 829 A.2d 1007 (2003); *see Walczak v. State,* 302 Md. 422, 427, 488 A.2d 949 (1985) (holding "that when the trial court has allegedly imposed a sentence not permitted by law, the issue should ordinarily be reviewed on direct appeal even if no objection was made in the trial court"). Appellant contests the restitution order as illegal because it was the product of an unconstitutional statute and it was, in any event, unsupported by competent evidence proved by a preponderance of the evidence.

The State cites several cases, *Brecker v. State,* 304 Md. 36, 497 A.2d 479 (1985), *Saenz v. State,* 95 Md.App. 238, 620 A.2d 401 (1993), and *Corcoran v. State,* 67 Md.App. 252, 507 A.2d 200, *cert. denied,* 307 Md. 83, 512 A.2d 377, *cert. denied,* 479

---

**2.** A trial court may order restitution either as part of the sentence or as a condition of probation. *See Pete v. State,* 384 Md. 47, 55, 862 A.2d 419 (2004); *Jackson v. State,* 68 Md.App. 679, 684, 515 A.2d 768 (1986).

U.S. 932, 107 S.Ct. 404, 93 L.Ed.2d 357 (1986), in support of its argument that appellant's contentions are not properly before us. Those cases are inapposite, because none addresses review of the legality of the sentence itself. *See Brecker,* 304 Md. at 39–42, 497 A.2d 479 (distinguishing *Walczak, supra,* and holding that the appellant's complaint that the court's ordering restitution, without first inquiring into his ability to pay restitution, was not preserved for appeal because the argument did not challenge the legality of the sentence and the appellant had not objected to the award on that ground at sentencing); *Saenz,* 95 Md.App. at 241 n. 1, 620 A.2d 401 (noting merely that we would consider Saenz's appellate argument notwithstanding that his trial counsel's comment of "Thank you, Your Honor" did "not constitute an objection" that would preserve Saenz's argument for appellate review); *Corcoran,* 67 Md.App. at 254–55, 507 A.2d 200 (distinguishing *Walczak* and holding that the appellant waived the contention that Maryland Rule 4–346 was violated because the hearing was held before someone other than the sentencing judge).

The contentions appellant presents attack the substantive legality of the restitution order. Notwithstanding appellant's failure to object at sentencing, his arguments are properly before us. *See Goff,* 387 Md. at 339–40, 875 A.2d 132; *Walczak,* 302 Md. at 427, 488 A.2d 949.

### *The constitutional challenge*

■ Appellant's first attack is grounded in a challenge to the constitutionality of a portion of Maryland's restitution statute. For purposes of this case, the operative version of the statute is Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.), Article 27, § 807. That section in pertinent part provides:

(a) *Restitution upon conviction, acceptance of plea of nolo contendere, etc.; priority of payment; reasons for not ordering restitution.* ——(1) A court may issue a judgment of restitution directing a defendant to make restitution in addition to any other penalty for the commission of a crime, if:

(i) Property of the victim was stolen, damaged, destroyed, converted, unlawfully obtained, or its value substantially decreased as a direct result of the crime;

* * *

(2) A victim is *presumed* to have a right to restitution under paragraph (1) of this subsection if:

(i) The victim or the State requests restitution; and

(ii) The court is presented with *competent evidence* of any of items (i) through (vi) of paragraph (1) of this subsection.

(Emphasis added.)

Focusing upon § 807(a)(2), appellant declares that the statute "violates due process because it does not require the State to prove the facts supporting an award of restitution by a preponderance of the evidence, and instead creates a presumption that restitution is warranted merely upon 'competent evidence' of a qualifying loss by the victim." Appellant insists that, "under the statutory scheme governing restitution, the existence of any evidence of a loss, so long as it is not legally incompetent, generates a presumption that restitution is warranted, no matter how unpersuasive the 'competent evidence' may be in light of the totality of the evidence before the court."

■ We disagree that the statute's reference to competent evidence generating a presumption of a qualifying loss by the victim eliminates the proof required for imposition of a restitution award. As we consider the issue, we are guided by the standard rules of statutory construction, principal among which is that we give effect to the plain language of the statute. *Goff*, 387 Md. at 341, 875 A.2d 132. Moreover, when, as here, a statute's constitutionality is challenged, our consideration of the issue is governed by the principles that "there is a presumption that the statute is valid," and appellate courts are "reluctant to find a statute unconstitutional if, by any construction, it can be sustained." *Galloway v. State*, 365 Md. 599, 610, 781 A.2d 851 (2001) (citations and internal quotation

marks omitted), *cert. denied,* 535 U.S. 990, 122 S.Ct. 1547, 152 L.Ed.2d 472 (2002).

■ By no stretch can it successfully be argued that Article 27, § 807 eliminates the basic requirement that the State prove the victim's entitlement to a restitution award. Certainly, the State must introduce "competent evidence" to carry its burdens of production and persuasion that the victim is entitled to restitution, and, if so, the amount of it. "Competent evidence" is simply evidence that is reliable and admissible. *See In re Billy W.,* 387 Md. 405, 433, 875 A.2d 734 (2005) (citing *Alix v. E–Z Serve Corp.,* 846 So.2d 156, 159 (La.App. 2003), for the proposition that "competent evidence" is evidence that has "some degree of reliability and trustworthiness"); *Grier v. State,* 351 Md. 241, 261, 718 A.2d 211 (1998) ("Incompetent evidence refers to evidence that is inadmissible for reasons other than relevancy."); Joseph F. Murphy, Jr., *Maryland Evidence Handbook,* § 600 at 233 (3d ed.1999) (stating that "[t]he competency issue focuses upon the inherent reliability of the evidence being offered. Evidence that passes the relevancy and materiality tests will be admitted unless it is incompetent or privileged").

■ We are convinced that a victim's entitlement to a restitution award and the amount of the award are facts that the State must establish by a preponderance of the evidence. The Supreme Court has held that use of the preponderance of the evidence standard of proof during sentencing generally satisfies due process. *See United States v. Watts,* 519 U.S. 148, 156, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam); *McMillan v. Pennsylvania,* 477 U.S. 79, 91–92, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *cf. Apprendi v. New Jersey,* 530 U.S. 466, 487 n. 13, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (noting that the holding of *McMillan* is not overruled; rather, the holding is limited "to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict").

The federal courts and a number of our sister states require the prosecution, by statute or by case law, to prove a victim's

entitlement to restitution by a preponderance of the evidence. *See United States v. Palma*, 760 F.2d 475, 480 (3rd Cir.1985) (stating that, by statute, the government must prove the victim's pecuniary loss by a preponderance of the evidence); *Ex Parte Stutts*, 897 So.2d 431, 433 (Ala.2004) (stating that, at a restitution hearing, the court need be convinced only by a preponderance of the evidence); *In re Stephanie B.*, 204 Ariz. 466, 65 P.3d 114, 118 (2003) (stating that "[t]he burden of proof applicable to restitution is proof by a preponderance of the evidence"); *People v. Baker*, 126 Cal.App.4th 463, 23 Cal.Rptr.3d 871, 875 (2005) (same); *People v. Harman*, 97 P.3d 290, 294 (Colo.Ct.App.2004) (same); *Benton v. State*, 711 A.2d 792, 797 (Del.1998) (same); *Koile v. State*, 902 So.2d 822, 824 (Fla.Dist.Ct.App.2005) (stating that "[t]he burden of proving the amount of restitution is on the State, and the amount must be proved by a preponderance of the evidence"); *Lawrenz v. State*, 194 Ga.App. 724, 391 S.E.2d 703, 704 (1990) (concluding that "the sufficiency of evidence to support an order of restitution should be measured by the civil standard of preponderance of the evidence"); *State v. Richmond*, 137 Idaho 35, 43 P.3d 794, 796 (2002) (stating that, by statute, when determining the amount of restitution in a criminal case, "economic loss shall be based upon the preponderance of evidence submitted to the court by the prosecutor, defendant, victim or presentence investigator"); *State v. Wagner*, 484 N.W.2d 212, 216 (Iowa Ct.App.1992) (stating that, by statute, a crime victim may recover damages proven by the state by a preponderance of the evidence); *Commonwealth v. Palmer P.*, 61 Mass.App.Ct. 230, 808 N.E.2d 848, 850 (2004) (stating that "[t]he standard of proof for restitution is preponderance of the evidence"); *State v. Terpstra*, 546 N.W.2d 280, 282 (Minn. 1996) (stating that, by statute, the prosecutor has the burden of proving the proper amount of restitution by the preponderance of the evidence); *People v. Consalvo*, 303 A.D.2d 202, 756 N.Y.S.2d 541, 542 (N.Y.App.Div.2003) (stating that "the standard of proof at a restitution hearing is preponderance of the evidence, not beyond a reasonable doubt"); *State v. Gill*, 681 N.W.2d 832, 834–35 (N.D.2004) (concluding that the State has

the burden of proving "the amount of restitution by a preponderance of the evidence"); *McCullough v. Commonwealth*, 38 Va.App. 811, 568 S.E.2d 449, 451 (2002) (stating that "the 'damages' or loss incurred by an aggrieved party as a result of the offense need only be proved by a preponderance of the evidence"); *State v. Hughes*, 154 Wash.2d 118, 110 P.3d 192, 211 (2005) (stating that, when "determin[ing] the amount of restitution, the trial court can either rely on a defendant's acknowledgment or it can determine the amount by a preponderance of evidence"); *State v. Kennedy*, 190 Wis.2d 252, 528 N.W.2d 9, 11 (1994) (stating that, whereas a jury must be convinced of the value of an item beyond a reasonable doubt, the sentencing court may determine the amount of loss to the victim of a crime by a preponderance of the evidence); *Renfro v. State*, 785 P.2d 491, 493 (Wyo.1990) (stating that "[p]roof of the restitution amount as a question of sentence need only be proved by credible evidence, by a preponderance, or burden of the evidence"); *see also* 5 Wayne R. LaFave *et al., Criminal Procedure,* § 26.6(c) (2002) (stating that, generally, courts must find the facts underlying a restitution order by a preponderance of the evidence).

The language of Article 27, § 807(a)(2) does not eliminate the preponderance of the evidence proof requirement, as appellant contends. That subsection provides that, once the State establishes by competent evidence that the victim is entitled to restitution, then the victim is "presumed" to have a right to it. We construe "presumed" in that context to mean simply that, once the State proves by competent evidence the loss to the victim, the court should award the victim that amount of restitution unless the court determines it is not appropriate to do so. Indeed, § 807 specifically addresses such a possibility:

(4) A court need not issue a judgment of restitution under this section if the court finds:

(i) That the defendant or liable parent does not have the ability to pay the judgment of restitution; or

(ii) Good cause to establish extenuating circumstances as to why a judgment of restitution is inappropriate in a case.

Section 807, read as a whole, makes plain that the State is not relieved of its obligation at sentencing to prove a victim's entitlement to restitution. The statute does not offend due process.

*Competency of the evidence and the court's findings*

■ Appellant argues that the court erred because it did not require the introduction of competent evidence of an appropriate award of restitution, and because the court did not make explicit findings concerning the amount of restitution ordered. The State counters that the court is not required to make explicit findings before entering an award of restitution. The State further maintains that, because appellant did not contest the restitution award at the sentencing hearing, he may not be heard to complain about it now.

We already have held that appellant has not waived the argument by failing to raise it at sentencing. Moreover, we agree with appellant that there is a disputed factual basis for the circuit court's restitution order. Certain bills and credit card receipts were admitted into evidence at trial. By our calculation, those bills total $7,001.24. The prosecutor did not rely on any of those documents at sentencing; instead, he merely proffered that restitution should be ordered in the amount of $6,881.42. That number conflicted not only with the total amount of the bills and invoices admitted into evidence, but also with other dollar amounts represented in the case: $6,400.00 (state's opening statement); and $6,553.00 (state's rebuttal closing argument).

We hold that the prosecutor's representations during the sentencing phase of appellant's trial do not constitute "competent evidence" of Brandywine's loss. *See, e.g., State v. Shelton,* 167 N.C.App. 225, 605 S.E.2d 228, 233–34 (2004) (holding that a prosecutor's unsworn statement of economic loss during sentencing was insufficient to sustain an award of restitution, particularly when the record did not include any evidence supporting the statement); *Winborn v. State,* 625 So.2d 977, 977 (Fla.Dist.Ct.App.1993) (reversing a restitution order on the ground that a prosecutor's statement regarding the vic-

tim's loss in a grand theft case was not "competent evidence" sufficient to establish the victim's loss).

It is evident from the record that Brandywine is entitled to some measure of recompense for the loss sustained as the result of the theft by appellant; indeed, appellant does not argue otherwise. We therefore shall vacate the order of restitution and remand the case to the circuit court so that it may conduct a restitution hearing, at which the prosecution must establish, by competent evidence, the appropriate amount of restitution to be ordered in this case. Our disposition obviates the need to address appellant's additional argument that the court failed to make explicit findings concerning the amount of restitution ordered. We nevertheless point out that in every case the record should clearly reflect the basis for the amount of restitution ordered.

## Closing argument

■ Appellant assails the trial court's decision to permit the prosecutor to make what appellant describes as an improper closing argument. Appellant argues that: (1) the prosecutor twice invited the jurors to consider their own interests by urging them to place themselves in the shoes of the victim (the so-called "golden rule" argument); and (2) the prosecutor approached the defense table and "pointed in [appellant's] face" while characterizing him as a "thief." [3]

Appellant asserts that the prosecutor's actions violated his right to a fair trial. He declares that this was a close case, and that he was prejudiced because the jury's attention was "diverted from the evidence by the prosecutor's variation of the prohibited Golden Rule argument and his inflammatory statements." We are not persuaded.

■ "The prosecutor is allowed liberal freedom of speech and may make any comment [during closing argument]

---

3. Although the record is not completely clear, the State does not contest, and the comments of counsel at the bench seem to confirm, that the prosecutor conducted himself as appellant describes.

that is warranted by the evidence or inferences reasonably drawn therefrom." *Grandison v. State,* 341 Md. 175, 224, 670 A.2d 398 (1995) (citations and internal quotation marks omitted), *cert. denied,* 519 U.S. 1027, 117 S.Ct. 581, 136 L.Ed.2d 512 (1996). Indeed, not every improper remark requires reversal of the conviction. *See Hill v. State,* 355 Md. 206, 226, 734 A.2d 199 (1999); *see also Degren v. State,* 352 Md. 400, 432–37, 722 A.2d 887 (1999) (attorneys enjoy great leeway during closing argument). Rather, "[r]eversal ... is only required where it appears that the remarks of the prosecutor actually misled the jury or were likely to have misled or influenced the jury to the prejudice of the accused." *Grandison,* 341 Md. at 244, 670 A.2d 398 (citations and internal quotation marks omitted); *see also Lawson v. State,* 389 Md. 570, 580, 886 A.2d 876 (2005).

 The "determination of whether the prosecutor's comments were prejudicial or simply rhetorical flourish lies within the sound discretion of the trial court. On review, an appellate court should not reverse the trial court unless that court clearly abused the exercise of its discretion and prejudiced the accused." *Spain v. State,* 386 Md. 145, 158–59, 872 A.2d 25 (2005) (quoting *Degren,* 352 Md. at 431, 722 A.2d 887). In other words, we defer to the trial court's evaluation of the effect of a comment upon the jury. *Henry v. State,* 324 Md. 204, 231, 596 A.2d 1024 (1991), *cert. denied,* 503 U.S. 972, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992).

The argument about which appellant complains was made during the State's rebuttal, and in response to defense counsel's suggestion, during his argument, that Brandywine employees attempted to cover up their handling of the credit card transactions. Defense counsel pointed out several facts suggested by the evidence and then argued:

Those things lead me to believe that after the fact when the bank started calling and somebody [at the store] had screwed up that there was a little bit of damage control there. Because, as anyone knows, the ... when you sit there and you're stupid about the way you transact busi-

ness, that you get what you deserve. And, I think that a lot of this is that they tried to cover it up after the fact kind of thing.

Evidently perceiving that argument as defense counsel's attempt to "blame the victim," the prosecutor responded with the following during rebuttal:

[PROSECUTOR]: You know and at some point ... at one point during his argument [defense counsel] said, "[a Brandywine employee] thought about damage control ... you get what you deserve.["] ] Okay. Mrs. 7–11 clerk, if you're counting money at 1 a.m., you deserve to get robbed. Young lady, you're walking to the park alone at night, you deserve to get attacked. Grandma ...

Defense counsel objected, the court overruled the objection, and the prosecutor continued:

[PROSECUTOR]: Grandma, when a guy says he runs a lottery and he's going to double your five thousand dollars in thirty days if you give him five thousand dollars, shame on you. Let's blame the victim. Okay. Could if [sic] Brandywine had been a little bit more careful? Sure. But, because they could have been more careful, we're going to let this thief walk?

Defense counsel again objected, and the court called the attorneys to the bench, where the following ensued:

[DEFENSE COUNSEL]: I'm okay with the conclusion of thief by [the prosecutor] one time, but when he comes over and when he comes over to the table and he points in his face and he says the thief again, that's too much, Judge.

THE COURT: Well ...

[DEFENSE COUNSEL]: It's [the prosecutor's] opinion is all it is.

THE COURT: Well, of course it is.

[DEFENSE COUNSEL]: And it's inflammatory because of the way it's done.

THE COURT: Well, I think you ought to wander around the courtroom less. Okay?

[PROSECUTOR]: Yes, sir.

The bench conference concluded and the prosecutor resumed his rebuttal:

[PROSECUTOR]: And, ultimately, did they do anything terribly wrong? They believe in good customer service. They believe in a fantasy world where you could trust people. A much better world to live in, I think, than [defense counsel's] world where you've got to double check everything.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

The prosecutor concluded rebuttal without further objection. At no time did defense counsel request a mistrial or other relief on the basis of the above remarks.

■■■ Appellant characterizes the prosecutor's rebuttal argument as akin to the prohibited "golden rule" argument. "A 'golden rule' argument is one in which an arguing attorney asks the jury to place themselves in the shoes of the victim." *Lawson*, 389 Md. at 593 n. 11, 886 A.2d 876 (citations omitted). Such argument is impermissible because it "improperly appeals to [the jurors'] prejudices and asks them to abandon their neutral fact finding role." *Id.* at 594, 886 A.2d 876.

Appellant directs us to the following cases: *Hill*, 355 Md. at 225, 734 A.2d 199 (cautioning this Court to "remain cognizant of [our] own conclusion that appeals to jurors to convict a defendant in order to preserve the safety or quality of their communities are improper and prejudicial"); *Holmes v. State*, 119 Md.App. 518, 526–27, 705 A.2d 118 (1998) (disapproving of prosecutor's comments to jury that the case is " 'about the day of reckoning, the day of accountability, the day we say no, Mr. Holmes, no longer will we allow you to spread that poison on the streets' "); and *Couser v. State*, 36 Md.App. 485, 501–02, 374 A.2d 399 (1977) (characterizing as improper the prosecutor's remarks to the jury that "by your vote you can say no to

drug dealers, to people who rain destruction" but holding that the remarks did not constitute reversible error because of a curative instruction). We shall also consider *Lawson*. *See* 389 Md. at 594–95, 886 A.2d 876 (addressing the impropriety of the prosecutor's question to the jurors that asked them to place themselves in the shoes of the mother whose child had been sexually molested).

Appellant argues that the prosecutor's argument generated the same fairness concerns as in those cases. We do not read the prosecutor's rebuttal argument in the same light as does appellant. The prosecutor's argument strikes us as a legitimate response to the defense counsel's statement, during his argument, that "Because, as anyone knows, [ ] ... when you [meaning the Brandywine employees] sit there and you're stupid about the way you transact business, that you get what you deserve."

Nor do we conclude that reversal is required because the prosecutor twice referred to appellant as a thief, while (at least once) standing near him and pointing at him. The trial judge evidently concluded that the reference was not beyond the bounds of legitimate argument, but admonished the prosecutor to "wander around the courtroom less."

To be sure, this Court has found it improper for a prosecutor to refer to the defendant in a murder trial as a "killer." *Mouzone v. State*, 33 Md.App. 201, 210, 364 A.2d 58 (1976). This Court also has found it improper for a prosecutor to refer to the defendant in a child sexual abuse case as "an animal" and a "pervert." *Walker v. State*, 121 Md.App. 364, 380–81, 709 A.2d 177 (1998). Likewise, the Court of Appeals has found it improper for a prosecutor to refer to a defendant charged with second degree rape of a child as a "monster." *Lawson*, 389 Md. at 596–97, 886 A.2d 876. As we said in *Walker*, counsel should "refer to the actions of a defendant rather than resort to epithets, thereby avoiding the unnecessary risk of overturning any conviction obtained." 121 Md. App. at 382, 709 A.2d 177.

We nonetheless are persuaded by our review of the record in its entirety, including the strong case the State presented against appellant, that the prosecutor's words and actions during closing argument did not render appellant's trial unfair. Even were we to assume that the prosecutor's rebuttal comments overstepped the bounds of legitimate argument, we are convinced that none of those comments "actually misled the jury or were likely to have misled or influenced the jury to the prejudice of the accused." *Degren,* 352 Md. at 431, 722 A.2d 887 (citation and internal quotation marks omitted).

ORDER OF RESTITUTION VACATED AND CASE RE-MANDED TO THE CIRCUIT COURT FOR CHARLES COUNTY FOR A NEW RESTITUTION HEARING CON-SISTENT WITH THIS OPINION. JUDGMENT OF CON-VICTION AND SENTENCE OTHERWISE AFFIRMED.

ONE–HALF OF THE COSTS TO BE PAID BY CHARLES COUNTY AND ONE–HALF TO BE PAID BY APPELLANT.